Malevinnie TURNER, Appellant,

v.

The PENDENNIS CLUB, Appellees.

No. 1999–CA–000425–MR.

Court of Appeals of Kentucky.

May 12, 2000.

David Bradley Mour, Sandra B. Hammond, Jeffrey A. Cross, Louisville, for Appellant.

Charles L. Woods, III, Matthew R. Westfall, Jr., Louisville, for Appellee.

Before: BARBER, COMBS, and McANULTY, Judges.

*OPINION*

COMBS, Judge.

The appellant, Malevinnie Turner (Turner), appeals from the order of the Jefferson Circuit Court granting summary judgment in favor of the appellee, The Pendennis Club (the Club), and dismissing her action. Having carefully reviewed the record, we affirm in part and vacate and remand in part the order of the circuit court.

Turner, an African–American female, began working for the appellee as a dishwasher in 1977. She held this position until 1990 when she injured her leg at work. Due to her injury, Turner was unable to work for approximately six weeks. When she returned to work at the Club, she was moved to the salad department of the kitchen. Her duties in the salad department included preparing salads, sandwiches, and other cold items—as well as maintaining and cleaning kitchen equipment.

In August 1995, the Club hired Bill Laird as executive chef. After evaluating the kitchen staff, Laird determined that their performance was deficient and that there were problems with discipline and leadership. He felt that the salad department presented the greatest problem and that a supervisor was needed in that department. Laird created a new position of salad/pantry supervisor. Although he placed an advertisement for the position in the local newspaper, he did not notify the Club's employees of this new position. Laird later explained that he did not make the kitchen staff aware of this new position because he did not believe that anyone from the staff possessed the qualifications he was looking for in a supervisor: namely, someone with formal culinary training and with experience in the areas of managing food preparation personnel, the production and creation of new food items, catering, and cost control and food pricing.

In September 1995, Heather Brown, a Caucasian female, was hired as the new

salad/pantry supervisor. Brown's resume indicated that she had received a degree in culinary arts from the Culinary Institute of America—with special skills in pastry baking, costing, and inventory control—and that she had graduated as an arts and food major from Andrews Prep School. She also had experience as a catering chef and production manager of a commissary kitchen for four restaurants. Shortly after Brown was hired as supervisor, on October 19, 1995, Turner resigned from her job. The Club maintains that Turner had resigned due to health problems related to her legs. However, Turner claims that she resigned because she had been subjected to harassment and that she had been a victim of gender and racial discrimination.

In May 1996, Turner filed an action against the Club, alleging: (1) that it had discriminated against her based upon her race and gender, (2) that it had violated the Workers' Compensation Act as to her work-related injury in 1990, and (3) that it was negligent in the training and supervision of its employees. Specifically as to her claims of discrimination, she maintained that similarly situated male and Caucasian employees were being paid more than she was at the time of her resignation and that she had been passed over for the promotion to salad/pantry department supervisor due to her race.

The case proceeded forward with discovery. Subsequently, the Club filed a motion for summary judgment. The court entered an order on July 15, 1998, granting summary judgment in favor of the Club and dismissing all of Turner's claims. The court found that Turner could not establish a *prima facie* case of racial and sex discrimination. As to the workers' compensation issue, the court held that her claim was barred by the two-year statute of limitations regarding workers' compensation claims. Turner filed a motion to alter, amend, or vacate the court's judgment. After conducting a hearing on the

matter, the court denied that motion. This appeal followed.

In order to qualify for summary judgment, the movant must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. On appeal, the standard of review of a summary judgment is whether the trial court correctly found that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary judgment should only be used "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Id.* at 483, citing *Paintsville Hospital Co. v. Rose,* Ky., 683 S.W.2d 255 (1985).

■ Turner argues on appeal that the court erroneously found that she could not establish a *prima facie* case of racial discrimination. She contends that there are genuine issues of fact as to whether she was qualified for the job of supervisor. Turner claims that she was not promoted to salad/pantry supervisor because of her race and that Brown was less experienced and that she had trained Brown. Turner states that although she had made the Club aware that she was interested in a promotion, she was neither notified of nor considered for the supervisor's position for which Brown was ultimately hired.

■ There are three critical sequences of occurrences in an employment discrimination action. First, the plaintiff must establish a *prima facie* case of discrimination by showing: (1) that she is a member of a protected class; (2) that she was qualified for and applied for an available position; (3) that she did not receive

the job; and (4) that the position remained open and the employer sought other applicants. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Next, if plaintiff succeeds in demonstrating those four criteria and thus establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a "legitimate nondiscriminatory" reason for its action. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Finally, should the employer be able to provide a "legitimate nondiscriminatory" reason for not hiring the plaintiff, the plaintiff bears the burden of showing by a preponderance of the evidence that the "legitimate reason" propounded by the employer is merely a pretext to camouflage the true discriminatory reason underlying its actions.

In the case before us, the trial court found that Turner could not establish a *prima facie* case of discrimination. Specifically, the court held that she had failed to show that she was qualified for the position of salad/pantry supervisor pursuant to the job description outlined by Laird. In a signed affidavit, Laird stated that he was looking for someone with: (1)formal culinary training, (2) skills in cost control and food pricing, (3) experience in supervising and management of cooks and food personnel, (4) experience in supervising and catering large parties, (5) technical and artistic skill in creating new food items, and (6) knowledge of both simple and fancy desserts. Although Turner had extensive experience with the Club and working in food preparation, she had no exposure to formal culinary training and had no skill or experience in food pricing, inventory, or cost control. She had little or no involvement in catering large events or in supervising kitchen personnel. Hence, we agree with the trial court that Turner failed to establish the second criterion of her *prima facie* case of discrimination—that she was qualified for the job or promotion.

■ Turner next alleges that trial court erred in dismissing her claim of racial and sex discrimination regarding her wages, asserting that the Club paid similarly situated male employees more than she received. In granting summary judgment in favor of the Club on this issue, the court stated that "[t]here is nothing to indicate that Ms. Turner was paid less as a result of race or sex while she was an employee of the Club." On this point, we disagree. An exhibit attached to the deposition of Peter Franklin, the general manager, lists all the kitchen employees, including Turner; their date of hire; and their current rate of pay. This document indicated that Turner's position was "Dishwasher/salad" and that her rate of pay was $5.46 per hour. While her rate of pay was higher than that of two other women with the same position, her pay rate was *less* than that of two men more recently hired for the same position. The list also show that many of the employees (both male and female) in "Dishwasher" and "Salad" who had less time with the Club were receiving a higher rate of pay than that allowed to Turner. Based upon this evidence, Turner has established at a minimum that she was a member of a protected class who was treated differently from similarly situated, non-minority, male employees.

The Club argues that Turner's claim must fail because the evidence shows that while Turner may have made less money than some male employees, she also made less money than some similarly situated female employees. We find that the reasoning of the United States Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), is applicable to this situation. In *O'Connor,* the Supreme Court unanimously rejected the argument that an age-discrimination plaintiff must prove as part of his *prima facie* case that he was replaced by someone outside of the protected class. The Court stated: "[t]he fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long

as he has lost out *because of his age."* *Id.* at 517 U.S. 312, 116 S.Ct. 1310, 134 L.Ed.2d 438 (1996).

We are persuaded that the Court's reasoning applies to race and gender discrimination cases as well. Here, Turner has demonstrated that she was paid less than similarly situated men; it is irrelevant that there were some women who were also paid at a higher rate. The critical question for our review is whether she was paid less because of her gender or race. Thus, we find that there was "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion ..." *Id.* at 517 U.S. 311, 116 S.Ct. 1309–10, 134 L.Ed.2d 438 (1996), *quoting Intern. Broth. Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

 Turner also challenges as erroneous the court's dismissal of her claim that she was constructively discharged. In cases involving constructive discharge, the commonly accepted standard is whether, based upon objective criteria, the conditions created by the employer's actions are so intolerable that a reasonable person would feel compelled to resign. *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309 (E.D.Ky.1990), *aff'd,* 924 F.2d 1057 (6 th Cir.1991).

Turner's claim that she was constructively discharged is based upon her allegation of several instances of harassment: that Brown forced her to skip her lunch on one occasion, that Brown harassed her for being late to work one day, and that Brown manipulated a knife toward her in a threatening manner. However, Turner's deposition testimony as to the knife incident failed to establish that Brown acted in a menacing or threatening manner. Turner recounted that she and Brown were working together and that Brown went to get a knife. As Brown came back to the area where she was working, Turner turned around, saw the knife, and jumped. Turner stated that she did not know if Brown was threatening her but that she felt threatened because one carrying a knife should not point it at another person. We agree with the trial court that Turner has failed to state intolerable working conditions that would constitute a constructive discharge. Thus, we affirm the decision of the trial court as to this issue.

 Turner also argues that the court erred in dismissing her claim that the Club had violated provisions of the Workers' Compensation Act. However, the record shows that Turner *has never filed* a workers' compensation claim nor has she previously sought compensation for her medical expenses. Turner states that she notified her supervisor of her injury and that the Club failed to notify her of her rights or to fulfill any of its statutory duties. The Workers' Compensation Act "is the exclusive remedy of an injured employee against an employer covered by the Act." *Zurich American Insurance Company v. Haile,* Ky., 882 S.W.2d 681, 684 (1994). Based upon the exclusivity of the Act, the court properly dismissed her claim since her remedy for any work-related injury comes solely within the purview of the Act. Her failure to seek compensation for her work-related injury pursuant to the Act cannot be salvaged in an improvidently asserted tort claim.

 Finally, Turner argues that the court erred in summarily dismissing her claim of negligent training and supervision on the ground that Kentucky has not recognized this tort. She is correct in noting that Kentucky has indeed recognized and acknowledged the existence of claims of negligent training and supervision. While we withhold judgment as to whether she has stated a viable claim as to this tort, we do hold that the court erred in summarily dismissing it due to a misconception that the underlying tort is non-existent in Kentucky. *Roman Catholic Diocese of Covington v. Secter,* Ky.App., 966 S.W.2d 286 (1998) and *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992). Thus,

summary dismissal of this claim was erroneously grounded.

In summary, we find that the circuit court properly granted summary judgment in favor of the Club as to three of Turner's claims: (1) that the Club discriminated against her on the basis of race in failing to promote her to supervisor due to her lack of qualification; (2) that she was constructively discharged, and (3) that the Club violated provisions of the Workers' Compensation Act. However, we find that the court erred in dismissing Turner's claim of disparate treatment regarding her pay and her claim of negligent training and supervision. We believe that Turner established a *prima facie* case of discrimination as to disparate treatment and that she must be "afforded a fair opportunity to show that the [employer's] stated reason for [the employee's] rejection was in fact pretext." *McDonnell Douglas Corporation*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 679 (1973). We also find that the court was clearly erroneous in dismissing her claim as to negligent training and supervision based on absence of precedent in Kentucky.

Based upon the foregoing reasons, we affirm in part and vacate and remand in part the decision of the Jefferson Circuit Court for additional proceedings consistent with this opinion.

ALL CONCUR.