Ernest McKISSIC, Appellant,

v.

COMMONWEALTH of Kentucky TRANSPORTATION CABINET; Commonwealth of Kentucky Justice and Public Safety Cabinet, Division of Vehicle Enforcement; and Commonwealth of Kentucky Personnel Board, Appellees.

and

Commonwealth of Kentucky Justice and Public Safety Cabinet, Division of Vehicle Enforcement, Appellant,

v.

Ernest McKissic; and Commonwealth of Kentucky Transportation Cabinet; and Commonwealth of Kentucky Personnel Board, Appellees.

and

Commonwealth of Kentucky Transportation Cabinet; Commonwealth of Kentucky Justice and Public Safety Cabinet; and Commonwealth of Kentucky Personnel Board, Appellants,

v.

Ernest McKissic, Appellee.

Nos. 2007–CA–002471–MR, 2008–CA–002282–MR, 2008–CA–002283–MR.

Court of Appeals of Kentucky.

Feb. 19, 2010.

Discretionary Review Denied by Supreme Court April 13, 2011.

Daniel J. Canon, Louisville, KY, for appellant/appellee Ernest McKissic.

Roger G. Wright, Frankfort, KY, for appellant/appellee Commonwealth of Kentucky Justice and Public Safety Cabinet, Division of Vehicle Enforcement.

Edwin A. Logan, Frankfort, KY, for appellant/appellee Commonwealth of Kentucky Transportation Cabinet.

Before NICKELL and VANMETER, Judges; LAMBERT,[1] Senior Judge.

## OPINION

VANMETER, Judge.

These three appeals stem from a single, multi-faceted employment discrimination proceeding heard by the Franklin Circuit

---

**1.** Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Court. We affirm as to Appeal No. 07–CA–002471–MR. We reverse and remand as to Appeals No. 08–CA–002282–MR and No. 08–CA–002283–MR.

Ernest McKissic is an African–American male over the age of forty. In October 2003, while he was employed by the Kentucky Justice and Public Safety Cabinet, Division of Vehicle Enforcement (KVE) as a Motor Vehicle Enforcement (MVE) Officer, McKissic applied for promotion to either of the two available merit positions as sergeant in Shelby or Scott County. *See* KRS Chapter 18A. McKissic was interviewed for the positions but was not selected for promotion. In November 2003, McKissic filed a discrimination charge with the Kentucky Commission on Human Rights (KCHR) and the Equal Employment Opportunity Commission (EEOC), alleging that he was denied promotion based on race and age. In March 2004, the EEOC closed its investigation of McKissic's claims, finding that it was "unable to conclude that the information obtained establishes violations of the statutes." He was provided with notice of his right to sue but did not file a claim at that point.

Meanwhile, in December 2003, McKissic filed an administrative appeal with the Kentucky Personnel Board, alleging race and age discrimination. After a two-day evidentiary hearing, the hearing officer found that McKissic failed to show that race or age was "considered in any manner during the promotion process." In February 2005, the full Personnel Board adopted the hearing officer's recommendations and dismissed McKissic's appeal.

McKissic then filed in the Franklin Circuit Court a joint petition listing as respondents the Kentucky Transportation Cabinet, the KVE, and the Personnel Board. McKissic sought judicial review of the Personnel Board's denial of relief, as well as KRS Chapter 344 damages relating to the alleged violation of his civil rights. In November 2007, the court entered a partial summary judgment dismissing the KRS Chapter 344 claim for damages. The remaining claims were resolved in August 2008, when the court found that substantial evidence did not support the Personnel Board's order. The court therefore vacated the Personnel Board's order and remanded it for rehearing.

The November 2007 partial summary judgment was followed by McKissic's Appeal No. 2007–CA–002471. The August 2008 order was followed by two separate appeals: the KVE and the Personnel Board filed Appeal No. 2008–CA–002282–MR, while the Transportation Cabinet, the KVE and the Personnel Board filed Appeal No. 2008–CA–002283–MR.

### APPEAL NO. 07–CA–002471–MR

McKissic appeals from the trial court's partial summary judgment dismissing his KRS Chapter 344 civil rights claim for damages, asserting that his action was not barred by either the doctrine of election of remedies, or the doctrine of *res judicata.* As we conclude that the trial court properly found that the action was barred by McKissic's election of remedies, we need not address the *res judicata* issue.

Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [2] 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for sum-

---

**2.** Kentucky Rules of Civil Procedure.

mary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. On review, the appellate court must determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

State executive branch employees such as McKissic are protected by KRS 18A.095(12),[3] which permits "[a]ny classified employee [to] appeal to the [Personnel] board an action alleged to be based on discrimination due to race ... or age forty (40) and above." Such proceedings must be conducted in accordance with the administrative hearing provisions set out in KRS Chapter 13B. *See* KRS 18A.095(17). Further, any state employee may file with the KCHR, "in accordance with KRS Chapter 344[,]" a complaint alleging race or age discrimination. KRS 18A.095(12). *See also* KRS 344.025 ("[n]o provision in KRS Chapter 18A shall be construed to preclude any classified or unclassified state employee from appealing to the personnel board any action alleged to be in violation of laws prohibiting" age or race discrimination).

■ In addition to the protections afforded to state executive branch employees by KRS Chapter 18A, KRS Chapter 344 establishes alternative administrative and judicial avenues for seeking damages resulting from civil rights violations. *See* KRS 344.200 and 344.450. *See also Vaezkoroni v. Domino's Pizza, Inc.*, 914 S.W.2d 341, 342 (Ky.1995). However, an employee seeking damages must elect which avenue to pursue. KRS 344.270 states:

> The provisions of KRS 13B.140 [4] notwithstanding, commission[5] shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before the commission. A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.

*Vaezkoroni* reaffirmed that KRS Chapter 344 provides alternative administrative and judicial sources of relief. 914 S.W.2d at 342 (quoting *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 820 (Ky.1992)). Thus, civil rights claimants must elect between potential remedies, and a state court may not exercise jurisdiction over a KRS Chapter 344 claim involving the same person

---

**3.** Renumbered from KRS 18A.095(13), effective June 25, 2009.

**4.** KRS 13B.140 relates to the judicial review of administrative orders.

**5.** For purposes of KRS Chapter 344, KRS 344.010(2) defines *commission* as the Kentucky Commission on Human Rights. However, the Kentucky Supreme Court clarified in *Vaezkoroni v. Domino's Pizza, Inc.*, 914 S.W.2d 341, 342 (Ky.1995), that the provisions of KRS Chapter 344 apply equally to state and local human rights commissions and that both types of commissions must be treated alike.

and grievance as an action pending before a civil rights commission. KRS 344.270. Similarly, a civil rights commission may not exercise jurisdiction over a KRS Chapter 344 claim involving the same person and grievance as a civil rights damages action pending before a state court. KRS 344.270. Further, no person may make a KRS Chapter 13B administrative claim once a KRS 344.450 civil rights damages claim, involving the same person and grievance, is finally resolved by a state court or civil rights commission. KRS 344.270.

The election of remedies in civil rights proceedings was addressed by this court, sitting *en banc,* in *Brown v. Diversified Decorative Plastics, LLC,* 103 S.W.3d 108 (Ky.App.2003). This court clarified that "[u]nder Kentucky law, the doctrine of election of remedies 'means that when a person has at his disposal two modes of redress, which are contradictory and inconsistent with each other, his deliberate and settled choice *and pursuit* of one will preclude his later choice and pursuit of the other.'" *Id.* at 113 (quoting *Collings v. Scheen,* 415 S.W.2d 589, 591 (Ky.1967)). Thus, parties who initiated but then withdrew civil rights commission complaints, without pursuing the administrative actions, were not prohibited from subsequently seeking judicial relief based on the same allegations of civil rights violations. *Brown,* 103 S.W.3d at 113. *Cf. Young v. Hammond,* 139 S.W.3d 895, 903 (Ky.2004) (election of remedies doctrine did not bar circuit court claim where EEOC file was closed and claimant did not file complaint with any state agency other than circuit court). *See also Wilson v. Lowe's Home Ctr.,* 75 S.W.3d 229 (Ky.App.2001); *Clifton v. Midway College,* 702 S.W.2d 835 (Ky. 1985); *Canamore v. Tube Turns Div. of Chemetron Corp.,* 676 S.W.2d 800 (Ky.App. 1984).

The majority opinion in *Brown* specifically distinguished the facts before it from the situations presented in cases such as *Vaezkoroni,* 914 S.W.2d 341, and *Founder v. Cabinet for Human Resources,* 23 S.W.3d 221 (Ky.App.1999), each of which involved the dismissal of a circuit court action filed either after a civil rights commission's dismissal of a claim on its merits, or while a claim was pending before such a commission. The dismissals were affirmed on appeal based on the claimants' elections of remedies since as allowing an employee "to choose between local or state administrative remedies and then still have the option of judicial relief" would be "absurd." *Vaezkoroni,* 914 S.W.2d at 342.

■ Here, similar considerations apply since McKissic's EEOC charge was dismissed after an investigation, and his separate administrative appeal to the Personnel Board was dismissed after the completion of a two-day evidentiary hearing. To allow McKissic to also pursue judicial relief, on the same grounds of race and age discrimination, not only would allow him two bites at the proverbial apple but also would have the "absurd" result of allowing him both judicial and administrative relief even though such multiple options would not have been available if he had initiated his claims in a different order. *See Vaezkoroni,* 914 S.W.2d at 342. Clearly, McKissic elected administrative rather than judicial remedies and, as stated by the trial court, "the issue of discrimination was prosecuted before the Personnel Board to a final administrative judgment." We conclude, therefore, that the trial court properly determined that it lacked jurisdiction to consider the KRS Chapter 344 claim raised before it and that it did not err by granting the partial summary judgment.

*APPEAL NOS. 2008–CA–002282–MR AND 2008–CA–002283–MR*

■ The Transportation Cabinet, the KVE and the Personnel Board (collectively referred to as appellants) filed two appeals from the Franklin Circuit Court's order vacating the Personnel Board's decision and remanding the matter for rehearing. They assert that the Personnel Board's decision in fact was supported by substantial evidence and that the court erred by failing to apply the correct standard of review in vacating that decision. We agree.

■ As succinctly stated in *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 578–79 (Ky.2002), an administrative agency decision

> is governed by the substantial evidence standard of review applicable to decisions of administrative agencies. "If the findings of fact are supported by substantial evidence of probative value, then they must be accepted as binding and it must then be determined whether or not the administrative agency has applied the correct rule of law to the facts so found." *Southern Bell Tel. & Tel. Co. v. Kentucky Unemployment Ins. Comm'n*, Ky., 437 S.W.2d 775, 778 (1969). The administrative agency's findings will be upheld even though there exists evidence to the contrary in the record. *Kentucky Comm'n on Human Rights v. Fraser*, Ky., 625 S.W.2d 852, 856 (1981). Substantial evidence is defined as "evidence of substance and relative consequence having the fitness to induce conviction in the minds of reasonable [persons]." *Owens–Corning Fiberglas Corp. v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998). We must also determine whether the decision of the

administrative agency was arbitrary or clearly erroneous, which is defined as "unsupported by substantial evidence." *Danville–Boyle County Planning and Zoning Comm'n v. Prall*, Ky., 840 S.W.2d 205, 208 (1992). "If there is any substantial evidence to support the action of the administrative agency, it cannot be found to be arbitrary and will be sustained." *Taylor v. Coblin*, Ky., 461 S.W.2d 78, 80 (1970).

■ The discrimination claim before the Personnel Board turned on KRS 344.040(1), which prohibits an employer from failing or refusing to hire, or otherwise discriminating against, "an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race ... [or] age forty (40) and over[.]" 101 KAR [6] 1:400 Section 1(1) in turn provides that in promoting classified state employees, a state agency must consider "an applicant's qualifications, record of performance, conduct, seniority and performance evaluations[.]" As summarized in *Brooks v. Lexington–Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 797 (Ky.2004), an employee who claims discrimination pursuant to KRS 344.040(1)

> bears the initial burden of proving a *prima facie* case of discrimination. *Jefferson County v. Zaring*, 91 S.W.3d 583, 590 (2002), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). One way this burden can be met is by proof that the plaintiff (1) is a member of a protected class, (2) was qualified for and applied for an available position, (3) did not receive the job, and (4) that the position remained open and the employer sought other applicants. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36

**6.** Kentucky Administrative Regulations.

L.Ed.2d at 678. Upon establishing a *prima facie* case of discrimination, the burden shifts to the defendant-employer to articulate a "legitimate nondiscriminatory" reason for its action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981). If the employer is able to provide such a "legitimate nondiscriminatory" reason for failing to hire or promote the plaintiff, the plaintiff "bears the burden of showing by a preponderance of the evidence that the 'legitimate reason' propounded by the employer is merely a pretext to camouflage the true discriminatory reason underlying its actions." *Turner v. Pendennis Club*, 19 S.W.3d 117, 120 (Ky.App.2000). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

Here, the Personnel Board approved and adopted the ten-page, single-spaced report prepared by a hearing officer after a two-day hearing during which McKissic was represented by counsel. The report noted that nine candidates, including McKissic, were interviewed for each of the two vacancies and that two younger Caucasian candidates, Brandon Eggen and Phillip Frazier, were hired for the positions. McKissic appealed to the circuit court, alleging age and race discrimination, and asserting:

I have almost sixteen years of service with the [KVE]. I have worked in Region 4 since 1990. I am fifty-five years old and an African American. I am a Vietnam Veteran and also served on the City of Franklin Police Department and the City of Mayfield Police Department. Brandon S. Eggen was selected for the Sergeant position in Region 4. He does not have the experience that I do in enforcement of motor vehicle laws, and has fewer years of state service. In addition, he has been previously selected for the Region 5 Sergeant position and was removed by Personnel Board Order. However, while he was still in that position, he was improperly transferred to the Sergeant position in Region 4. That action also had to be rescinded by the Personnel Board. Mr. Eggen is about thirty years of age. Mr. Phillip Frazier was promoted to the MVE Sergeant position in Scott County, Region 5. I believe he is under forty. I have more seniority than he does.

The Appointing Authority failed to follow the promotion requirements to fill these vacant positions. I do not believe they gave appropriate consideration to the statutory and regulatory factors and selected Mr. Eggen because of his previous promotion and transfer. I have excellent evaluations. My 2002 evaluation was outstanding. I am better qualified than Eggen and Frazier, have more seniority and have equal, if not better, record of performance and conduct. This time, while I was interviewed, there have been times in the past when I was not interviewed when I applied for promotions.

To the best of my knowledge, there are only two African–American Officers in the Division of Vehicle Enforcement, and there are no African–American Sergeants or Lieutenants on the force.

The selection of Mr. Eggen and Mr. Frazier for these promotions is arbitrary and capricious and failed to give appropriate weight to the statutory factors, and utilized factors outside of the statutory factors.

As noted above, the circuit court agreed with McKissic in asserting that substantial evidence did not support the Personnel Board's promotion decision, and this appeal followed.

McKissic satisfied his initial burden of establishing a *prima facie* case of discrimination based on age and race by showing that he was qualified for promotion to two available positions which were awarded to younger Caucasian applicants. Our review therefore focuses on the burden which shifted to appellants to show the existence of a "legitimate nondiscriminatory" reason for their action. *Brooks,* 132 S.W.3d at 797.

The Transportation Cabinet responded to McKissic's claim by producing evidence to show that a legitimate, nondiscriminatory reason existed for its action. According to the Personnel Board's order, the Transportation Cabinet produced evidence that Eggen transferred to the KVE from another state position in November 1996 and that he was promoted from trainee to officer in December 1997. Eggen's February 2002 promotion to sergeant involved a voluntary transfer from Shelby County to Scott County, but he then sought and was granted a lateral transfer back to Shelby County. For reasons not entirely clear from the record, the Shelby County appointment subsequently was rescinded and the position was reopened pursuant to KRS Chapter 18A.

The Personnel Board also found that Frazier was appointed to a trainee position in November 1989, promoted to inspector in November 1990, and promoted to officer in November 1993.

Finally, McKissic was appointed to a trainee position in May 1988. He was promoted to officer in October 1989.

The record includes the certified registers showing the applicants for the two positions sought by McKissic, as well as the two interviewers' summaries of their interviews of McKissic, Frazier and Eggen. According to the Personnel Board, Betty Hoskins testified as the appointing authority of the Transportation Cabinet, stating that she reviewed the information provided by the interviewers, reviewed personnel records of all the candidates, and performed an instant record analysis. The Personnel Board noted that McKissic was born in 1948, while Frazier and Eggers were born in 1970 and 1974, respectively. The remaining candidates for the positions were born between 1952 and 1963.

Interviewer David Jackson testified regarding his interviews of the candidates for the two vacancies. According to the Personnel Board's summary of the testimony, Jackson stated he and interviewer Steve Maffett "developed a procedure to cover the five criteria necessary on promotions." The candidates were asked to provide two years of evaluations and to briefly describe in writing their reasons for seeking the positions. Jackson had a copy of each candidate's register, personnel file, and training certifications and documents. After the interviews, Jackson met with Maffett before making promotion recommendations. Jackson then had no further involvement in the hiring process. On cross-examination, Jackson indicated

that he was selected on the interview panel because he was objective and did not know or was not related to any of the candidates. Mr. Jackson testified that [McKissic] was the only candidate with a conduct problem noted. Mr. Jackson further noted that he did not consider age, sex or race, or any criteria outside of 100 KAR 1:400 in making his recommendations. When asked to compare the successful candidates to [McKissic], Mr. Jackson testified that Mr. Eggen was better qualified than [McKissic] and that Mr. Frazier was also better qualified than [McKissic]. Mr. Jackson further testified that he was aware of no reason at this time that would cause him to change his mind

regarding the recommendations for the subject vacancies.

Interviewer Maffett testified that during the interviews he had access to each candidate's application and most recent evaluations. Although the candidates' training and personnel files were not before him, he knew "a lot about what training everyone had received[,]" including that Frazier had "a lot" of voluntary training. He did not know what voluntary training programs had been offered to McKissic, and he could not remember McKissic participating in any such training. Maffett testified that no standard method was used for offering voluntary training to officers and that supervisors generally were contacted to see if employees were interested in receiving such training.

Maffett stated that although Frazier was notified of his appointment to a KVE Officer Honor Guard, the group never actually came into existence. According to the Personnel Board, Maffett indicated that in reviewing the candidates' verbal and written responses to questions, he was most interested in their communication and reasoning skills. He testified that good communication skills were essential to the position of sergeant and that he did not consider age, sex or race when making his recommendations, which instead "were based only on the five criteria set forth on the Internal Mobility forms before him during the interviews." [7] The Personnel Board stated that when he was asked to compare Eggen, Frazier and McKissic by using the five criteria, Maffett

> testified that Officer Eggen was superior to [McKissic] in four out of the five categories and that McKissic was only superior with regards to his seniority. Maffett further testified that Officer

Frazier was superior in three out of the five categories, with [McKissic] being superior in performance and seniority.

Further, Maffett was familiar with the circumstances of McKissic's prior disciplinary suspension from duty, as addressed by several exhibits introduced below. Maffett indicated that he and Jackson independently formulated opinions before meeting and agreeing that Frazier and Eggen were the best candidates.

The Personnel Board noted that Maffett testified that Regions 4, 5 and 7 had only three African–American officers, none of whom were sergeants, lieutenants or captains. The Board noted that although McKissic produced an October 2003 regional report to support his claim that "Eggen was considered to be a sergeant prior to his official promotion date[,]" other evidence suggested that Eggen was listed on the report as a sergeant because the report was completed after Eggen's promotion.

The Personnel Board found that McKissic previously sought promotion and that he first was interviewed for promotion in October 2002. McKissic stated that he never was advised of or requested available training. He

> testified that he served in the army from February 1968 until September 1970 and was honorably discharged at the rank of Sergeant, E–5. He began working with Big K thirty days after his discharge. Officer McKissic testified that he was never made aware of any MVE Honor Guard program. He further testified that regarding the complaint investigation . . ., he did not participate in the investigation. He further testified that he did not have an oppor-

---

7. A review of the forms shows that in accordance with 101 KAR 1:400, Section 1(1), the five listed criteria are seniority, qualifications, performance evaluations, record of performance, and conduct.

tunity to reply to his suspension.... [McKissic] testified that that was the only suspension he has had in all of his years working for the MVE and that he has received some commendations for citizenship in the past.

McKissic also testified that in 2001 and 2002 he received job evaluation grades of "highly effective" and "outstanding." He graduated from mortuary school and earned an unspecified number of college and business school credits, but he received no distinguished service awards or merit pay increases.

Hawkins, as the appointing authority, testified that all three candidates were qualified for the position of sergeant and that she did not consider age, sex or race in making her decision to promote Frazier and Eggen. When asked to compare the three candidates, Hawkins testified that McKissic had 15.3 years of seniority in comparison to Frazier's 14 years and Eggen's "10 plus" years and that Frazier had more education than McKissic. Eggen had higher evaluation scores than McKissic, while McKissic had higher evaluation scores than Frazier. Neither Frazier nor Eggen had any record of disciplinary sanctions, while McKissic had a record of one suspension which Hawkins specifically described as "important since the promotion in question involved a supervisory position." Moreover, both Frazier and Eggen had received numerous service awards, while McKissic had received none. Hawkins testified that she agreed with the recommendations to promote Frazier and Eggen after reviewing the candidates' applications, personnel files, written and verbal statements, and interview summaries.

The Personnel Board agreed with Hawkins that McKissic, Eggen and Frazier were qualified for the positions. The Personnel Board noted that during the interviews, Jackson and Maffett had access to and considered information regarding each applicant, including internal mobility forms which addressed the five criteria set out in 101 KAR 1:400, Section 1(1), as well as "a summary of questions and answers from the interviews, written statement, application, instant record analysis, leave balance summary, 2001 and 2002 Annual Employee Performance Evaluations and position description for MVE Sergeant." According to the Personnel Board, McKissic had greater seniority than the other two candidates, and his performance evaluations were superior to Frazier's but inferior to Eggen's. However, of the three candidates, only McKissic had a record of past disciplinary action. Further, unlike Frazier and Eggen, McKissic had received no distinguished service awards and, unlike Eggen, he had received no outstanding performance merit increases. The Personnel Board found that despite the "absolutely deplorable" lack of African–American employees within the agency, the record contained no direct evidence to suggest that McKissic was discriminated against on the basis of race. Similarly, although McKissic was the oldest applicant for the positions, the Personnel Board found that the candidates' ages were given "no consideration" during the promotion process.

The Personnel Board concluded that Hawkins and the interviewers had adequate information to support their decisions and that McKissic "failed to carry his burden of proof that the process and the decision were inconsistent with the requirements of 101 KAR 1:400." The Board also found that McKissic failed to show that his race or age "was considered in any manner during the promotion process."

On review, however, the circuit court noted that McKissic

was the only African–American applicant for the positions and, along with

others who were not promoted, over the age of 40. The successful applicants were under the age of 40 and white. In addition, [McKissic] had superior experience and education over at least one of the other applicants and the appointing authorities admittedly did not have all of the personnel records of the applicants when they made their recommendations.

The court concluded that "a careful reading of the record" failed to show that substantial evidence supported the Personnel Board's findings, conclusions and final order. We disagree.

As stated above, the issue on appeal turns on whether the Personnel Board satisfied its burden of articulating a legitimate nondiscriminatory reason for promoting Frazier and Eggen rather than McKissic. *Brooks*, 132 S.W.3d at 797. As noted, all three candidates were found to be qualified for the available promotions. Although the circuit court stated that the "appointing authorities" did not have all of the applicants' personnel records when making the promotion "recommendations," the record in fact shows that Hawkins alone was the appointing authority,[8] and that she testified she did review the parties' personnel files prior to the appointments. Moreover, Hawkins also reviewed the information which must be considered pursuant to 101 KAR 1:400, Section 1(1) as to each candidate, including information regarding seniority, qualifications, performance evaluations, performance records, and conduct. As noted above, such information demonstrated that although McKissic had more seniority and higher evaluation scores than Frazier, Frazier had more education than McKissic. Further, although McKissic had more seniority than Eggen, Eggen had higher evaluation scores than McKissic. Finally, both Frazier and Eggen had received numerous service awards and had never received disciplinary sanctions, while McKissic had received zero service awards and one disciplinary suspension.

Certainly, concerns about McKissic's disciplinary record, as well as the evidence in the record that his performance record history was inferior in comparison to the selected candidates, provided legitimate, nondiscriminatory reasons for the promotion of Frazier and Eggen rather than McKissic. *See Brooks*, 132 S.W.3d at 797. Absent his showing by a preponderance of the evidence that the stated reasons were pretextual, McKissic was not entitled to relief. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Turner*, 19 S.W.3d at 120. The Personnel Board's decision therefore was supported by substantial evidence, and the circuit court erred by setting that decision aside. Hence, the order entered by the circuit court on August 1, 2008, must be reversed, and this matter must be remanded for reinstatement of the Personnel Board's order dismissing McKissic's appeal.

The partial summary judgment entered by the Franklin Circuit Court on November 5, 2007, as addressed in Appeal No. 07–CA–002471–MR, is affirmed. The order entered by the Franklin Circuit Court on August 1, 2008, as addressed in Appeals No. 08–CA–002282–MR and No. 08–CA–002283–MR, is reversed, and this matter is remanded to the circuit court for reinstatement of the Personnel Board's order dismissing McKissic's administrative appeal.

ALL CONCUR.

8. KRS 18A.005(1) defines an appointing authority in part as "the agency head or any person whom he has authorized by law to designate to act on behalf of the agency with respect to employee appointments[.]"