RENDERED: MAY 19, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0402-MR

PAULA M. HANEY, AS PERSONAL
REPRESENTATIVE OF ESTATE OF
DONALD PRATER, JR.                                          APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM JOHNSON CIRCUIT COURT<br>HONORABLE JOHN DAVID PRESTON, JUDGE<br>ACTION NO. 21-CI-00019 |

CITY OF PAINTSVILLE; JEFF
TABOR; JOHNSON COUNTY
SHERIFF'S DEPARTMENT;
PAINTSVILLE FIRE DEPARTMENT;
PAINTSVILLE POLICE
DEPARTMENT; RICK RATLIFF;
SHANE CANTRELL; AND
ZACHARY STAPLETON                                          APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE,
JUDGES.

CALDWELL, JUDGE:  Paula Haney (Haney), as the representative of the Estate of Donald Prater, Jr. (the Estate), brought suit against the Paintsville Police and Fire Departments, the Johnson County Sheriff's Department, and individuals employed by those entities.  The suit alleged wrongful death, battery, excessive force, and negligence, as well as negligent hiring, retention, training, and supervision against the City of Paintsville.

The Johnson Circuit Court dismissed the suit against the Paintsville Fire Department and Chief Rick Ratliff, finding that the Department was entitled to governmental immunity and the Chief to qualified official immunity.  The court dismissed the suit against the City of Paintsville, finding the city enjoyed immunity from suit pursuant to the Local Governments Act, KRS[1] 65.2003.

Summary judgment was entered in favor of the Johnson County Sheriff's Department and Deputy Jeff Tabor, finding the Department was entitled to sovereign immunity and Tabor to qualified official immunity.  The court likewise entered summary judgment in favor of the Paintsville Police Department and Officers Zachary Stapleton and Shane Cantrell, based on qualified official immunity.

---

[1] Kentucky Revised Statute.

The Estate appeals the rulings of the Johnson Circuit Court dismissing the actions or granting summary judgment. We affirm in part, reverse in part, and remand.

**FACTS**

On April 17, 2020, the Paintsville Fire Department received a call that an injured man was sitting on the porch of an abandoned home on Main Street in Thelma, Kentucky, a community in Johnson County. When emergency medical services responded, they found Donald Prater, Jr. (Prater) sitting on the porch, clad only in a t-shirt. He was covered in mud and blood and was clearly under the influence of a controlled substance. He was transported to the hospital by emergency medical services.

Deputy Jeff Tabor of the Johnson County Sheriff's Department responded to the hospital. There, he interviewed Prater who told him he believed he had ingested some "bad meth" and had been hallucinating that he had been run over by a train which had "pushed his soul out of his body." Before leaving the hospital, Tabor spoke with doctors who said they would perform toxicology testing upon Prater.

Shortly after Tabor left the hospital, an emergency call was received into dispatch from the hospital, reporting that a man had torn a telephone off the wall of the emergency department and then had run naked out a back door of the

hospital. Paintsville Police Department officers were dispatched to the hospital, where they learned that the man had been seen running in the direction of a nearby hotel. Deputy Tabor also responded back to the scene. Along with the hospital security guard, the three officers went to the hotel, where they were told that the naked man had been there, but he had already run out the front door. The officers split up to search the area for the man, believed to be Prater.

A call came in from a nearby apartment complex reporting a naked man walking down Main Street. The law enforcement officers all converged on Main Street, with Paintsville Police Department (PPD) Officer Shane Cantrell arriving first. He made contact with Prater, who refused to heed his commands and started yelling and cursing at him. PPD Officer Zachary Stapleton then arrived on the scene and Prater began yelling and cursing at him and began advancing toward him. Officer Stapleton unholstered his taser and ordered Prater to stand still. Instead, Prater rushed towards Stapleton, who deployed his taser. Unfazed by the shock, Prater pulled the taser probes from his body and ran away up Main Street.

The officers followed Prater until he rushed towards Officer Cantrell, who deployed pepper spray at him. Prater continued to resist, undaunted. Officer Stapleton struck Prater with his baton on Prater's right thigh, but Prater still continued to resist arrest. Deputy Tabor arrived on the scene and managed to get

Prater prone on the ground, but Prater kept his arms beneath him making it impossible to handcuff him. Tabor deployed his taser without probes in a "dry stun" hoping to subdue Prater, but it had no effect. Instead, all three officers, along with Fire Department Chief Ratliff who had arrived on the scene to respond as a medical responder, worked together to handcuff Prater.

Once they were able to secure him, Ratliff noticed that Prater's breathing had become shallow. Ratliff grabbed a pocket mask from his vehicle and started rescue breathing and monitoring Prater's pulse. While waiting for an ambulance to arrive, Prater went into full arrest, with Ratliff attempting CPR. The EMS crew took over lifesaving efforts and Prater was transported to the hospital. He was pronounced deceased a short time later.

The emergency room physician believed that Prater had died from cardiac arrest brought about by excited delirium due to drug use. The medical examiner found no evidence of lethal trauma. Haney, as the personal representative for Prater's estate, alleged in a complaint filed in Johnson Circuit Court that it was the actions of the officers and Ratliff which had caused Prater's death. She sought damages for battery, wrongful death, and negligence, against the officers and Ratliff, as well as suing the City of Paintsville, its fire and police departments and the Johnson County Sheriff's Office for negligent hiring, training, and retention.

The Johnson Circuit Court dismissed the suit against the City of Paintsville and the Fire Department, finding they enjoyed governmental immunity. The suit against Ratliff was dismissed after the court found he was entitled to official qualified immunity. Summary judgment was entered in favor of the Johnson County Sheriff's Department after finding it was entitled to sovereign immunity and in favor of Deputy Tabor, finding he was entitled to qualified official immunity. Finally, summary judgment was entered in favor of the Paintsville Police Department and Officers Stapleton and Cantrell after finding all were entitled to qualified official immunity. The Estate appealed and we affirm in part, reverse in part, and remand the matter to the Johnson Circuit Court for proceedings consistent with this Opinion.

## STANDARDS OF REVIEW

Appellate courts review the granting of motions to dismiss by trial courts *de novo*. "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010).

Motions for summary judgment are similarly reviewed by appellate courts with no deference granted to the trial court's legal determinations.

> The proper standard of review on appeal when a
> trial judge has granted a motion for summary judgment is

-6-

whether the record, when examined in its entirety, shows there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. *Spencer v. Estate of Spencer*, 313 S.W.3d 534, 537 (Ky. 2010) (quoting *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991)).

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010).

## ANALYSIS

### *1. Dismissal of Suits*

The trial court granted motions to dismiss in favor of the City of Paintsville and the Paintsville Fire Department, as well as the suit against Fire Chief Rick Ratliff personally. The trial court held that the Paintsville Fire Department was entitled to governmental immunity, pursuant to *Caneyville Volunteer Fire Department v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790 (Ky. 2009). Finding Ratliff's actions on that day were discretionary, the trial court found the Chief was entitled to the protections of qualified official immunity. The trial court held that the City of Paintsville was immune from suit pursuant to KRS 65.2003.

The trial court cited the *Caneyville Volunteer Fire* case to support its finding both that the department was entitled to governmental immunity, as well as the Chief being entitled to qualified official immunity. In that opinion, the

Kentucky Supreme Court cited the case of *Autry v. Western Kentucky University* to explain the difference between governmental immunity of agencies of the government and qualified official immunity for the employees of those agencies when sued individually:

> Governmental immunity extends to state agencies that perform governmental functions (i.e., act as an arm of the central state government) and are supported by money from the state treasury. *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). However, unless created to perform a governmental function, a state agency is not entitled to governmental immunity. *Kentucky Center for the Arts Corp. v. Berns*, 801 S.W.2d 327 (Ky. 1990). An analysis of what an agency actually does is required to determine its immunity status.
>
> If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity. The immunity that an agency enjoys is extended to the official acts of its officers and employees. However, when such officers or employees are sued for negligent acts in their individual capacities, they have qualified official immunity.
>
> Qualified official immunity applies to public officers or employees if their actions are discretionary (i.e., involving personal deliberation, decisions and judgment) and are made in good faith and within the scope of their authority or employment. This is intended to protect governmental officers or employees from liability for good faith judgment calls in a legally uncertain environment. An act is not "discretionary" merely because some judgment is used in deciding on the means or method used. However, even if an act is discretionary, there is no immunity if it violates constitutional, statutory, or other clearly established

-8-

rights, or if it is done willfully or maliciously with intent to harm, or if it is committed with a corrupt motive or in bad faith. The burden is on the plaintiff to show that the public official or employee was not acting in good faith. *Yanero*, 65 S.W.3d at 522-23.

If the negligent acts of public officers or employees are ministerial, there is no immunity. An act is ministerial if the duty is absolute, certain, and imperative, involving mere execution of a specific act based on fixed and designated facts. If ministerial acts are proper, then the public officer or employee has official immunity without qualification. *Id*. at 522. Any act done by a public officer or employee who knows or should have known that his actions, even though official in nature, would violate constitutional rights or who maliciously intends to cause injury, has no immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

219 S.W.3d 713, 717 (Ky. 2007)

In the *Caneyville Volunteer Fire* matter, the Kentucky Supreme Court determined that municipal fire departments, such as the Paintsville Fire Department, are perhaps the archetypal example of governmental function.

It is incontrovertible that fire departments perform a paradigmatic function of the government in keeping the populous and its property safe from fire. Indeed, one would be hard-pressed to think of a more representative government function. Notably, Kentucky has a longstanding tradition of treating firefighting as a governmental function and thereby cloaking it in immunity.

286 S.W.3d 790, 799 (Ky. 2009).

-9-

The trial court's determination as to whether the Paintsville Fire Department is entitled to governmental immunity was correct. Turning to the determination as to Chief Ratliff personally, the trial court determined that his actions on that day were discretionary. We agree. As Chief Ratliff is a firefighter and emergency medical responder, he is not ordinarily engaged in participating in the arrest of citizens. He made a judgment that his assistance was needed to place Prater in handcuffs. The exercise of judgment is the gravamen of the exercise of discretion.

The Estate argues that Chief Ratliff was not acting as Fire Chief at the time of the incident and so he was not entitled to immunity as he was not engaged in discretionary functions of being a firefighter, but rather was acting as a police officer by helping with the detention of Prater. Such argument ignores the facts that Prater had originally been transported to the hospital by emergency medical services and that as the Fire Chief, Ratliff also had oversight of the emergency medical services provided in the area. He responded to the later scene in his capacity as a provider of emergency medical services and provided those services in determining Prater had a weak pulse and in providing emergency medical measures on the scene. He was clearly providing emergency services pursuant to KRS 75.070 and is therefore entitled to qualified immunity.

The City of Paintsville was sued by the Estate on a theory of negligent hiring, training, and retention. The trial court cited KRS 65.2001 and 65.2003 as providing municipalities immunity from lawsuits. We find the trial court painted this immunity with too broad a brush.

KRS 65.2003 clearly limits the immunity granted by the statute to those occasions when the municipality is engaged in judicial, quasi-judicial, legislative, or quasi-legislative functions.[2] We cannot agree that the theory under which the Estate was suing the City of Paintsville falls under these categories. Rather, the theory of liability forwarded here is as non-governmental a task as there can be. The theory of negligent hiring, oversight, and retention is a theory of

---

[2] KRS 65.2003(3):

> Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
>
> (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
>
> (b) The failure to enforce any law;
>
> (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;
>
> (d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or
>
> (e) Failure to make an inspection.

liability regularly forwarded against private entities.[3]  It is in hiring and overseeing an employee that a municipality acts most as a private entity and least as a governmental one.

Therefore, we affirm the orders of dismissal as to Chief Ratliff and the Paintsville Fire Department, but reverse and remand on the question of whether the suit against the City of Paintsville for negligent hiring, training, and supervision can go forward, finding that the trial court erred in holding that the city was immune from suit pursuant to KRS 65.2003.

### 2.  Entry of Summary Judgment

The trial court granted motions for summary judgment in favor of the Johnson County Sheriff's Department and Deputy Tabor and the Paintsville Police Department and Officers Cantrell and Stapleton.

We find that the trial court erred in granting summary judgment for the Paintsville Police Department.  The Police Department, as a subdivision of the City of Paintsville itself, was sued under the theory of negligent hiring, training,

---

[3]  Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established.  *See*, *e.g.*, *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. App. 2000) ("Kentucky has indeed recognized and acknowledged the existence of claims of negligent training and supervision."); *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 291 (Ky. App. 2009) (recognizing negligent supervision); *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 441-42 (Ky. App. 1998) (recognizing negligent hiring and retention).

*MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014).

and retention. As we held above, the trial court too broadly relied upon KRS 65.2003 in finding immunity protected the police department, so we reverse as to that entity and remand.

The Sheriff's Department, however, is a subdivision of the county government and is therefore entitled to sovereign immunity.

> Whereas a county enjoys sovereign immunity and cannot be held vicariously liable for the torts of its employees, a municipality is immune only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions, . . . and can otherwise be held vicariously liable for the torts of its employees.

*Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 164 (Ky. 2003) (citations omitted).

As to the employees of the entities, all three were found to be entitled to qualified immunity. We find that the granting of qualified immunity was premature as there was no finding of whether there was a particular "special relationship" which existed between the parties.

The caselaw is clear. Public officials owe the general public no duty of care unless the public official has some particular "special relationship" with the injured party.

> In order for the special relationship to exist, two conditions are required: 1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor.

*City of Florence v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001), *as amended* (Feb. 26, 2001).

There was no finding concerning whether the officers owed Prater a duty of care due to this "special relationship." As the trial court failed to review the claims against Cantrell, Stapleton, and Tabor using the correct standard, we reverse the granting of qualified immunity for each of them and remand for a determination whether Prater was in state custody and, if so, whether any of the officers committed "violence or offensive conduct" upon him during that custody. Such is a very different question than what the trial court found, *i.e.*, that the officers were entitled to qualified governmental immunity. *See Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995) ("In order to establish an affirmative legal duty on public officials in the performance of their official duties, there must exist a special relationship between the victim and the public officials."). We remand to the trial court for a determination as to whether this special relationship existed.

## CONCLUSION

The trial court properly granted dismissal to the City of Paintsville Fire Department and Chief Rick Ratliff. However, we find that the trial court erred in dismissing the claims against the City of Paintsville alleging negligent hiring, training, and supervision as such are not judicial or legislative functions. The trial

court properly granted summary judgment in favor of the Johnson County Sheriff's Department as a subdivision of the county government. However, we find that the trial court improperly entered summary judgment in favor of the individual officers and deputy without a finding that there was no "special relationship" between each of them and Prater, and in favor of the Paintsville Police Department on the claim of negligent hiring, training, and supervision as those are not judicial or legislative functions.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andre F. Regard
Charles W. Rowland
Lexington, Kentucky

BRIEF FOR APPELLEE JOHNSON COUNTY SHERIFF'S DEPARTMENT AND JEFF TABOR:

Jonathan C. Shaw
Paintsville, Kentucky

BRIEF FOR APPELLEE PAINTSVILLE POLICE DEPARTMENT, ZACH STAPLETON, SHANE CANTRELL, RICK RATLIFF, PAINTSVILLE FIRE DEPARTMENT, AND CITY OF PAINTSVILLE:

Melissa Thompson Richardson
Colin Buckner
Lexington, Kentucky