**William C. JACOBS, Appellant,**

v.

**KENTUCKY STATE RACING COMMISSION, Appellee.**

Court of Appeals of Kentucky.

Sept. 22, 1977.

Rehearing Denied Nov. 11, 1977.

Discretionary Review Denied
April 4, 1978.

**642**

William C. Jacobs, Jack G. Jones, Jr., Lexington, for appellant.

Fred F. Bradley, Frankfort, for appellee.

Before COOPER, REYNOLDS and WINTERSHEIMER, JJ.

WINTERSHEIMER, Judge.

Appellant seeks to reverse a judgment of the Franklin Circuit Court which sustained an order of the Kentucky State Racing Commission, entered October 6, 1973, which in turn had upheld a Steward's ruling of April 28, 1973, which had ordered a horse named "Cause No Trix", owned by the appellant, to be unplaced for all purposes except pari-mutuel betting. The horse had won the fifth race at Keeneland on April 26, 1973, but following a report by the official chemist that a urine sample taken from the horse after the race proved positive as to a prohibited medication known as oxyphenylbutazone, a Steward's hearing was conducted on April 28 to dispose of the matter pursuant to Rule 14.05 of the Racing Commission. Appellant, who is an attorney, represented the trainer at the hearing. The horse was disqualified and the purse was not awarded to the owner. Appellant appealed to the Kentucky State Racing Commission and presented evidence in his behalf at a hearing held June 26, 1973. The full Commission sustained the Steward's ruling and an appeal was taken by the owner to the Franklin Circuit Court which sustained the order of the Racing Commission on November 6, 1974. A notice of appeal was filed November 6, 1974. This matter was transferred by the Supreme Court to the Court of Appeals on January 31, 1977.

Appellant presents six assignments of error as follows:

1) Does the Kentucky State Racing Commission have the power to enact and enforce rules to prohibit participation in the purse distribution by a horse which tests positive for a prohibited medication?

2) Is the owner entitled to be notified of a Steward's hearing concerning a "positive test" when the trainer of the horse is notified, particularly when the owner has actual notice of the hearing and participates therein as the attorney for the trainer?

3) Is the testing of winners only, without testing other horses in the race, a selective enforcement of the Commission rule for a post-race test?

4) May the Commission, pursuant to statute, promulgate a rule which prohibits the presence of a medication which is a derivative of phenylbutazone in a horse's urine sample as a proper and legitimate exercise of its rule making power?

5) Is the Commission regulation prohibiting purse participation by a horse whose urine sample indicates the presence of a prohibited medication reasonable and not arbitrary?

6) Where the trainer admits to administering the prohibited drug, is it error to penalize the owner when the prohibited substance is a derivative of phenylbutazone?

This Court affirms the judgment of the trial court which sustained the Kentucky State Racing Commission and the Steward's ruling.

Seventy-two hours prior to the race, the horse received a medication referred to variously as oxyphenylbutazone or phenylbutazone or a derivative of phenylbutazone. The record indicates that this substance is commonly known as "bute". This medication was administered to the horse because of pain which arose from chronic ankle trouble. The horse won the fifth race at Keeneland in Lexington, Kentucky, on April 26. Thereafter, the horse was disqualified when the prohibited substance was found in a urine sample.

■ The Kentucky State Racing Commission has the power to enact and enforce rules which result in the denial of participation in the purse distribution by the owner of a horse which tests positive for a prohibited medication. The statute provides that it is in the interest of the public health and safety to vest in the Commission forceful

control of thoroughbred racing. Inherent in such control is the right to enact and enforce rules which are necessary to fulfill that mission. Moreover, the statutes permit rules which condemn the presence of prohibited substances which affect the speed or health of a race horse. In this instance the health of the horse is the controlling factor in the application of the Commission's authority. The record indicates that the subject animal had a history of chronic ankle trouble. The medication was prescribed to reduce pain. The ultimate affect of the alleviation of such pain on the outcome of the race or the speed of the horse is clearly within the purview of the Commission's authority as enunciated by the statutes. KRS 230.215, 230.240 and 230.260. The owner is not necessarily entitled to be notified of a Steward's hearing concerning a positive test when the trainer is notified, particularly when the owner has actual notice of the hearing and has participated therein as the attorney for the trainer.

■ The testing of all winners of races without testing other horses is a valid exercise of the Commission's enforcement power. Such action is a legitimate classification based on long standing custom and practice in the racing industry. In certain situations there are exceptions, such as at the discretion of the Stewards, or when the first two horses are tested in races involving exotic betting where there is a separate pool for selecting the first two horses. The Commission has authority to disqualify a horse where a prohibited substance is found in the post-race testing process. This record does not show that it is practical to test the other horses who may benefit as a result of a disqualification of the original winner. The record does not support the argument that this should have been done in this case or should be done in every case. Certainly the question of selective enforcement of the rule for testing is of great interest. The practical solution to this kind of problem is not satisfactorily presented here. In fact, the possibility of such an amendment to the testing procedures might best be presented to the Racing Commission

in the form of a rule modification. It is of some concern to this Court that the owners of a horse placing second or third in a race, where the original winner is disqualified, are permitted to retain their share of the purse without any post-race testing.

■ The Racing Commission Rule 14.06, which prohibits the presence of a medication which is a derivative of phenylbutazone in a horse's urine sample is a legitimate exercise of the Commission's administrative statutory powers. The Commission is vested with broad powers to regulate thoroughbred racing and to prescribe rules and regulations relative to racing. KRS 230.260. The record in this case does not disclose sufficient reasons for a finding that the Commission's determination prohibiting the medication is unreasonable or arbitrary. In this situation the evidence indicates that the trainer was fully aware of the history of chronic ankle trouble and that "bute" was used in training the horse. Dr. Proctor, one of the appellant's witnesses, testified that he had prescribed the "bute" and that such medication is used only when the horse is hurting. It is clear that such a situation supports the logical presumption for banning the use of "bute" in order to protect the health of horses.

■ The Commission rule which prohibits purse participation when a banned medication which is a derivative of phenylbutazone is found in the horse's urine is reasonable. The Kentucky rule provides that the mere presence of the prohibited substance shall cause a horse to be disqualified. The record, as distinguished from the arguments of counsel, does not disclose any sound reason to disturb the findings of the Racing Commission and the trial court in this regard. Although there may be more equitable regulations in other states, the record does not clearly indicate that the Kentucky rule is arbitrary or unreasonable. It would appear that the racing industry should utilize every opportunity to improve itself. Perhaps the introduction of a blood test prior to the race would remove the possibility of selectivity or discrimination in the testing of horses, and provide a better

system of disqualifying animals prior to the race. However, the facts and record in this case do not warrant a finding of unreasonableness as to the Kentucky rule.

The record fails to disclose that the application of the Kentucky rule was improper. The chemist's testimony indicates that the terms derivative or metabolized phenylbutazone are synonymous, with the only distinction being that a derivative would be when this is done in a laboratory, and metabolized when it is done in the animal's body. It is only a different process of obtaining the same product.

In this case great reliance has been placed by the appellee on the decision in a somewhat similar case, *Kentucky State Racing Commission v. Fuller,* Ky., 481 S.W.2d 298 (1972). It is the opinion of this Court that there are significant differences between the instant case and the *Fuller* case, and the *Fuller* case is not dispositive of the issues presented here since that case turned on the question of substantial evidence of a sufficient probative value.

The judgment of the trial court is affirmed.

All concur.