**V. T. SOBOLEWSKI, Appellant,**

v.

**LOUISVILLE DOWNS, INC., Appellee.**

Court of Appeals of Kentucky.

Dec. 19, 1980.

James L. Avritt, Lebanon, for appellant.

William C. Boone, Dorothy M. Pitt, Greenebaum, Doll & McDonald, Louisville, for appellee.

Before COOPER, GANT and HOWERTON, JJ.

HOWERTON, Judge.

Sobolewski appeals from a summary judgment dismissing his claim against Louisville Downs, Inc. on the basis that he had failed to exhaust his administrative remedies. Sobolewski initiated the action to recover damages for a breach of contract arising from Louisville Downs's failure to conduct the Kentucky Pacing Derby No. 1 in accordance with its published conditions.

Sobolewski presents several arguments, but we only need to decide those which pertain to dismissal for failure to exhaust an administrative remedy. Since we are reversing and remanding this action, the remaining issues may be properly presented to the circuit court.

Sobolewski entered his horse in the Kentucky Pacing Derby No. 1 along with 12 other horses. The stake conditions provided that only 12 horses could compete in the final event. Two elimination races were conducted on September 9, 1978, and Sobolewski's horse was the one eliminated from the final competition. The total purse was $200,000.00. The winners of the elimination heats were to be paid $10,000.00, and $20,000.00 was to provide a purse for a consolation race for any horse which participated in an elimination event but did not qualify for the final event. The remainder was to be divided among the winners of the final event.

Louisville Downs, Inc. refused to schedule the consolation race because only one horse was eligible, and because the horse was an "also eligible" entrant in the final competition, if one of the twelve entrants withdrew. The matter was referred to the presiding judge at the track, who issued a ruling that the consolation race was not required.

The ruling was issued on September 12, and a copy was delivered to the horse's groom, a boy named Joe, as is shown in the record. A deputy commissioner had directed that notice of the ruling be served on the owner or the trainer. Neither Sobolewski nor the trainer ever received the copy of the ruling. Both parties had left the track and did not return until September 17. 811 KAR 1;070, § 5 permits a licensed trainer to

be absent from a track for five days without appointing a new trainer of record. Sobolewski admits that he had been told what the ruling would be, but he argues that such knowledge cannot be equated with notice of the entry and time of the entry of the actual, final ruling.

The final pacing derby event was held on September 17. Sobolewski did not file an appeal to the Kentucky Harness Racing Commission within 10 days after the ruling, and on September 22, 1978, the entire purse, including the consolation prize money, was distributed to the winners of the main event. Approximately one month later, Sobolewski filed his complaint in the Jefferson Circuit Court claiming $20,000.00 on the theory of a breach of contract.

We have no doubt that Sobolewski and his horse were subject to the rules and regulations of the Kentucky Harness Racing Commission. Kentucky trotting and harness racing is governed by KRS 230.610 through 230.760. It is also governed by the rules and regulations adopted by the Commission. 811 KAR 1;045, § 9, reads:

> Every entry shall constitute an agreement that the person making it, the owner, manager, agent, or other person having control of the horse, and the horse, shall be subject to the rules and regulations, and will submit all disputes and questions arising out of such entry to the authority and to the judgment of this commission, which decision shall be final.

811 KAR 1;105, § 1, reads in part:

> If any person ... be aggrieved by any ... decision or ruling of the judges, such person ... may have a review of such ruling or decision by filing a written appeal with the commission not later than 10 days after the ruling or decision is made.

Despite such strong statements in the regulations adopted by the commission, we are faced with several unanswered questions applicable to this case.

Normally, the Harness Racing Commission would have the authority to order that the consolation race be held and that the $20,000.00 be paid to Sobolewski. *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298 (1972). But, we would have to ask whether the Commission would have such authority, after the purse has been distributed? The answer to that question has never been decided.

■ Generally, where an administrative agency has the authority to pass on every question raised, courts withhold their aid entirely until the administrative remedies have been exhausted. The statutory authority of the Kentucky Harness Racing Commission is not crystal clear, but it is identical to the powers of the Kentucky State Racing Commission which governs thoroughbred and appaloosa racing. In *Kentucky State Racing Commission v. Fuller, supra*, the court held that the Racing Commission was more than an administrative agency having quasi-judicial functions of fact finding and of applying its laws to the facts. It was created to maintain honesty in racing. The circuit court had set aside the Commission's order as to how to distribute a purse in the Kentucky Derby and its order to exclude the first-place finisher because of findings that the first-place horse had been drugged. The Court of Appeals reversed.

■ We believe that the Kentucky Harness Racing Commission needs broad powers to enforce its regulations and to police the activity of harness racing, but the legislature has not seen fit to grant any specific powers which would help in this situation. KRS 230.630 and .640 set forth the authority, power, purpose, and policy of the Commission and the Act. KRS 230.630 reads in part as follows:

> The commission, in the interest of breeding or the improvement of the breed of standardbred horses, shall have all powers necessary and proper to carry out fully and effectually the provisions of KRS 230.610 to 230.760 including, but without limitation, the following:

(1) The commission is vested with jurisdiction and supervision over all standardbred horse race meetings in this commonwealth and over all associations and all persons on association grounds ...

(2) The commission, its representatives and employees, may visit, investigate and have free access to the office, track facilities or other places of business of any licensee ...

(3) The commission shall have full authority to prescribe rules, regulations and conditions under which standardbred horse racing shall be conducted in this state and to fix and regulate the minimum amount of purses, stakes or awards to be offered for the conduct of any standardbred race meeting;

KRS 230.640(2) reads in part as follows:

It is hereby declared the purpose and intent of the commonwealth in the interest of the public health, safety, and welfare, to vest in the commission forceful control of standardbred racing in the commonwealth with plenary power to prescribe rules and regulations and conditions under which all legitimate standardbred racing and wagering thereon is conducted in the commonwealth so as to encourage the improvement of the breed of standardbred horses in the commonwealth, to regulate and maintain standardbred racing in the commonwealth of the highest quality and free of any corrupt, incompetent, dishonest, or unprincipled standardbred racing practices, and to regulate and maintain standardbred racing in the commonwealth so as to dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of standardbred racing in the commonwealth. ... The power of the commission to penalize persons for violation of KRS 230.610 to 230.760 or any rule or regulation of the commission shall not be limited to denial of, suspension of, revocation of or voidance of a license to conduct or participate in standardbred racing, and ejection and exclusion of persons from association grounds but the commission may in its discretion impose fines not to exceed five thousand dollars ($5,000) against an association and one thousand dollars ($1,000) against other licensees in addition thereto.

The portions of the statutes just quoted are the strongest evidence of broad power. However, they certainly do not indicate that the commission could order Louisville Downs to pay what would amount to a judgment or penalty in the sum of $20,000.00, which is what it would have to do if it were to grant the relief sought by Sobolewski. When it comes to the ordering of the payment of any sum, the limit on a fine or penalty for an association or race track is $5,000.00. KRS 230.640(2).

*Fuller, supra,* is the closest case to granting such authority, but it is clearly distinguishable. *See also, Jacobs v. Kentucky State Racing Commission,* Ky.App., 562 S.W.2d 641 (1977). It is one thing for the Commission to have the authority to order how a purse is to be distributed, and it is quite another thing to order an extra payment or a redistribution of a purse which has already been paid. If the necessary power is to be granted by the judiciary, we will leave that to our Supreme Court.

■ Any requirement that Sobolewski must now present his case to the Commission would be an exercise in futility. Unless he can bring his case to court, he can seek no remedy. This cannot be, unless Sobolewski has already received due process of law through the ruling of the track judge and the service of the order on the groom. On the issue of due process and notice, there is at least a dispute as to what was done and what was required to be done. We will therefore refrain from deciding as a matter of law that Sobolewski was denied due process and leave that decision to the trial court after a hearing and a complete consideration of the merits.

In the event due process of law has thus far been denied, Sobolewski must be accorded some route to a remedy. The right to resort to the courts is provided for in § 14 of the Kentucky Constitution. Citizens must have a remedy with due process of law for any injury. *Kendall v. Beiling*, 295 Ky. 782, 175 S.W.2d 489 (1943).

■ Sobolewski argues that there are several exceptions to the doctrine of exhaustion of remedies. In addition, he contends that the presiding judge's ruling was void and rendered without proper authority. All of his arguments become a bit mixed and confusing when they involve such rules and doctrines as relate to exhaustion of administrative remedies, primary jurisdiction, exclusive jurisdiction, consideration of questions of law, attacks on void orders, and lack of jurisdiction. To cut through all of the confusion, however, we must conclude that when any party has been aggrieved by an order of an administrative agent or agency, and in so doing has been denied due process of law and no longer has any viable remedy through the administrative process, a court of competent jurisdiction may consider the problem and grant the appropriate relief.

■ The case of *Goodwin v. City of Louisville*, 309 Ky. 11, 215 S.W.2d 557 (1948), although factually and procedurally distinguishable, provided that direct judicial relief is available without the exhaustion of administrative remedies "where the complaint raises an issue of jurisdiction as a legal question, not dependent upon disputed facts ...." *Id.*, at 559. By way of analogy, we can say that the Commission is without authority or jurisdiction to determine the issue and grant the requested relief. Thus, direct judicial relief is available without resorting to an appeal to the Commission.

In the event the circuit court determines that Sobolewski has heretofore been denied due process, the remaining questions must then be considered. Among them are whether the ruling of the presiding judge was void, and if not, whether it was erroneous. Sobolewski contends that the terms of the Derby required the consolation race and the $20,000.00 purse even for a one-horse "walk-over." The question of whether Louisville Downs acted in good faith, and if so, if it is statutorily exempt from liability, has also been raised. Sobolewski argues that such an exemption is unconstitutional. The listing of these issues is in no way intended to limit the questions presented to the trial court. They are merely some of the primary issues presented on this appeal which we cannot or should not decide at this time.

The judgment of the Jefferson Circuit Court is reversed, and this case is remanded for further proceedings.

All concur.