Jeffrey PEARCE, Appellant

v.

Billy WHITENACK, Individually; Billy Whitenack, in his Official Capacity as Chief, Harrodsburg Police Department; City of Harrodsburg; Eddie Long, in his Official Capacity as Mayor; Kerry Anness, in his Official Ca-

pacity as Commissioner; Charlie Mattingly, in his Official Capacity as Commissioner; Scott Moseley, in his Official Capacity as Commissioner; and Marvin Isham, in his Official Capacity as Commissioner, Appellees.

No. 2013–CA–000669–MR.

Court of Appeals of Kentucky.

Aug. 8, 2014.

Bradley Guthrie (argued), Harrodsburg, KY, for appellant.

Charles D. Cole, Derrick T. Wright (argued), Lexington, KY, for appellees.

Before ACREE, Chief Judge; TAYLOR and VANMETER, Judges.

*OPINION*

VANMETER, Judge:

Jeffrey Pearce brings this appeal from a January 4, 2013, Order and an April 8, 2013, Order of the Mercer Circuit Court dismissing his complaint in its entirety. We affirm.

## I. Factual Background.

Pearce was employed as a patrol officer with the City of Harrodsburg Police Department. On March 31, 2012, Pearce posted a comment on his Facebook page regarding a fatal accident he had worked that day. The Facebook comment read "rough night investigating a fatal accident. The family has my prayers." As a result, Police Chief Billy Whitenack issued Pearce a Notice of Verbal Counseling on April 5, 2012. Therein, Whitenack informed Pearce that he violated police department policy and was so advised.

Subsequently, Debbie Sallee filed a citizen's complaint against Pearce concerning an incident that occurred on April 6, 2012, at Walmart while Pearce was off duty. On May 14, 2012, Whitenack issued Pearce a 48–Hour Notice, which stated:

> This letter is to serve as your 48–hour notice for an interview with Chief Billy Whitenack and Lieutenant Chad Powell in reference to a complaint filed by, Debbie Sallee for a situation that occurred on April 17, 2012[,] at Wal–Mart in Harrodsburg, KY. The interview will be to investigate the complaint filed by Mrs. Sallee. The complaint falls under a Category III subsections. "Taking any action which will impair the efficiency or reputation of the Department, its members, or employees."

The meeting will begin on Thursday[,] May 17, 2012[,] at 1500 hours.

Thereafter, on May 25, 2012, Whitenack issued a Notice of Suspension. Whitenack suspended Pearce with pay pending an internal investigation into possible violations of the Harrodsburg Police Department Rules of Conduct Sections 1.01 (Violations of Rules), 1.02 (Unbecoming Conduct), 1.18 (Insubordination), 1.25 (Courtesy), 1.30.A (Public Statements and Appearances) and 1.45 (Truthfulness).

A few days later, on June 1, 2012, Pearce tendered his resignation to the Harrodsburg City Clerk at approximately 11:00 a.m. On the same date, at approximately 1:00 p.m., he filed a Grievance with the City Clerk. In the Grievance, Pearce alleged that Whitenack violated sundry provisions of KRS[1] 15.520 and that his suspension was improper. By letter dated June 4, 2012, the Harrodsburg City Attorney informed Pearce that his resignation was received by the City and that his Grievance was "procedurally defective and [would] not be addressed by the City or its Board of Commissioners."

## II. Trial Court Proceedings.

Pearce then filed a complaint in the Mercer Circuit Court against Whitenack, individually and in his official capacity as Chief of the Harrodsburg Police Department; City of Harrodsburg; Eddie Long, in his official capacity as Mayor; Kerry Anness, in his official capacity of Commissioner; Charlie Mattingly, in his official capacity as Commissioner; Scott Moseley, in his official capacity as Commissioner; and Marvin Isham, in his official capacity as Commissioner (collectively referred to as "Appellees"). Pearce's complaint, as amended,[2] contained eight separate counts:

---

1. Kentucky Revised Statutes.

2. Pearce's initial complaint included a count for "Violation of Right to Free Speech." Af-

four counts alleging violation of his due process rights as provided by KRS 15.520, plus four additional counts alleging various tort claims: invasion of privacy, wrongful discharge, intentional interference with contractual relations, and civil conspiracy.

In response, Appellees filed a motion to dismiss under CR[3] 12. Appellees argued that Pearce failed to exhaust his administrative remedies under KRS 15.520 and, as such, deprived the trial court of jurisdiction.

By orders entered January 4, 2013, and April 8, 2013, the trial court concluded that Pearce failed to exhaust his administrative remedies as provided by KRS 15.520, thus depriving it of jurisdiction. In so concluding, the trial court reasoned:

> [Pearce] in the instant action is a former police officer with the Harrodsburg Police Department. In May of 2012, he was suspended in connection with a prior citizens' complaint. While on suspension, [Pearce] quit his job; he now claims constructive discharge. In his complaint, he alleges 1) free speech violations based on Section 8 of the Kentucky Constitution; 2) due process violations based on non-compliance with KRS 15.520; 3) wrongful discharge; 4) intentional interference; and 5) civil conspiracy. In its January 3, 2013[,] order, this Court agreed with [Appellees] that the claims should be dismissed due to [Pearce's] failure to exhaust his administrate remedies under KRS 15.520. [Pearce] counters that he was not required to exhaust administrative remedies, as he was constructively discharged.
>
> . . .

[Pearce], who undeniably failed to exhaust his administrate remedies under KRS 15.520 by quitting his job prior to an administrative hearing, cannot simply bypass the statute by invoking common law tort claims. Kentucky law presumes that all parts of KRS 15.520, including administrative procedures, were intended to have meaning. . . . Clearly, an administrative hearing is required; otherwise KRS 15.520 would be rendered meaningless.

> The Court also agrees with [Appellees] with regard to jurisdiction. The Kentucky Supreme Court held that "exhaustion of administrative remedies is a jurisdictional prerequisite to seeking judicial relief." *Commonwealth v. DLX, Inc.*, 42 S.W.3d 624 (Ky.2001). Jurisdiction is therefore predicated on compliance with administrative remedies; without same, this Court lacks jurisdiction to proceed in the matter.
>
> . . .
>
> In his motion for relief, [Pearce] also argues that he attempted to pursue administrative remedies by filing an internal grievance with the City of Harrodsburg. However, the fatal blow to [Pearce's] argument is that he resigned before any investigation or inquiry was made. His resignation ended his right to proceed in this matter.

This appeal follows.

## III. Standard of Review.

█ As matters outside the pleadings were considered by the trial court, we review the trial court's dismissal of Pearce's complaint under the summary

ter Appellees filed their initial Motion to Dismiss, Pearce moved to amend his complaint, substituting a count for "Invasion of Privacy" for that alleging a "Violation of Right to Free Speech." Although the record does not appear to include an Order granting this mo-

tion, the parties agree that the motion was granted and the amended complaint forms the basis of Pearce's cause of action.

3. Kentucky Rules of Civil Procedure.

judgment standard. CR 12.03; *McCray v. City of Lake Louisvilla,* 332 S.W.2d 837 (Ky.1960). Summary judgment is proper where there exist no material issues of fact and the movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky.1991). In this case, the material facts are undisputed and resolution is dependent upon issues of law.

### IV. Issues on Appeal.

Pearce raises four issues on appeal: 1) whether KRS 15.520 preempts tort claims under Kentucky law; 2) whether the administrative procedures of KRS 15.520 apply to tort claims; 3) whether KRS 15.520 is the exclusive remedy for violations of that statute; and 4) whether an "expectation of privacy" is an element of Invasion of Privacy under Kentucky law.

#### A. *Exhaustion of Administrative Remedies.*

The Kentucky Supreme Court has spoken directly on the obligation to exhaust administrative remedies:

> Exhaustion of administrative remedies is a well-settled rule of judicial administration that has long been applied in this state. *See generally Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet,* 133 S.W.3d 456, 471–72 (Ky.2004). The exhaustion of remedies doctrine is easily explained: "proper judicial administration mandates judicial deference until after exhaustion of all viable remedies before the agency vested with primary jurisdiction over the matter." *Board of Regents of Murray State University v. Curris,* 620 S.W.2d 322, 323 (Ky.App. 1981). The doctrine does not preclude judicial review, but rather delays it until after the expert administrative body has compiled a complete record and rendered a final decision. *Popplewell's,* 133 S.W.3d at 471. Exceptions to this principle do exist: a party is not required to exhaust all administrative remedies when the statute is alleged to be void on its face. *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557, 559 (1948). Exhaustion of remedies is likewise not required when continuation of an administrative process would amount to an exercise in futility. *Popplewell's,* 133 S.W.3d at 471. This is the case when a complaint "raises an issue of jurisdiction as a mere legal question, not dependent upon disputed facts, so that an administrative denial of the relief sought would be clearly arbitrary." *Goodwin,* 215 S.W.2d at 559.

*Ky. Ret. Sys. v. Lewis,* 163 S.W.3d 1, 3 (Ky.2005).

Pearce's first three claims of error directly implicate KRS 15.520 and his obligation to exhaust administrative remedies. KRS 15.520 is commonly referred to as the Police Officer's Bill of rights. *City of Munfordville v. Sheldon,* 977 S.W.2d 497 (Ky.1998). KRS 15.520 reads:

> (1) In order to establish a minimum system of professional conduct of the police officers of local units of government of this Commonwealth, the following standards of conduct are stated as the intention of the General Assembly to deal fairly and set administrative due process rights for police officers of the local unit of government and at the same time providing a means for redress by the citizens of the Commonwealth for wrongs allegedly done to them by police officers covered by this section:
>
> > (a) Any complaint taken from any individual alleging misconduct on the part of any police officer, as defined herein, shall be taken as follows:
> >
> > > 1. If the complaint alleges criminal activity on behalf of a police officer, the allegations may be investigated without a signed, sworn complaint of the individual;

2. If the complaint alleges abuse of official authority or a violation of rules and regulations of the department, an affidavit, signed and sworn to by the complainant, shall be obtained;

3. If a complaint is required to be obtained and the individual, upon request, refuses to make allegations under oath in the form of an affidavit, signed and sworn to, the department may investigate the allegations, but shall bring charges against the police officer only if the department can independently substantiate the allegations absent the sworn statement of the complainant;

4. Nothing in this section shall preclude a department from investigating and charging an officer both criminally and administratively.

(b) No threats, promises, or coercions shall be used at any time against any police officer while he or she is a suspect in a criminal or departmental matter. Suspension from duty with or without pay, or reassignment to other than an officer's regular duties during the period shall not be deemed coercion. Prior to or within twenty-four (24) hours after suspending the officer pending investigation or disposition of a complaint, the officer shall be advised in writing of the reasons for the suspension;

(c) No police officer shall be subjected to interrogation in a departmental matter involving alleged misconduct on his or her part, until forty-eight (48) hours have expired from the time the request for interrogation is made to the accused officer, in writing. The interrogation shall be conducted while the officer is on duty. The police officer may be required to submit a written report of the alleged incident if the request is made by the department no later than the end of the subject officer's next tour of duty after the tour of duty during which the department initially was made aware of the charges;

(d) If a police officer is under arrest, or likely to be arrested, or a suspect in any criminal investigation, he shall be afforded the same constitutional due process rights that are accorded to any civilian, including, but not limited to, the right to remain silent and the right to counsel, and shall be notified of those rights before any questioning commences. Nothing in this section shall prevent the suspension with or without pay or reassignment of the police officer pending disposition of the charges;

(e) Any charge involving violation of any local unit of government rule or regulation shall be made in writing with sufficient specificity so as to fully inform the police officer of the nature and circumstances of the alleged violation in order that he may be able to properly defend himself. The charge shall be served on the police officer in writing;

(f) When a police officer has been charged with a violation of departmental rules or regulations, no public statements shall be made concerning the alleged violation by any person or persons of the local unit of government or the police officer so charged, until final disposition of the charges;

(g) No police officer as a condition of continued employment by the local unit of government shall be compelled to speak or testify or be questioned by any person or body of a nongovernmental nature; and

(h) When a hearing is to be conducted by any appointing authority, legisla-

tive body, or other body as designated by the Kentucky Revised Statutes, the following administrative due process rights shall be recognized and these shall be the minimum rights afforded any police officer charged:

1. The accused police officer shall have been given at least seventy-two (72) hours notice of any hearing;

2. Copies of any sworn statements or affidavits to be considered by the hearing authority and any exculpatory statements or affidavits shall be furnished to the police officer no less than seventy-two (72) hours prior to the time of any hearing;

3. If any hearing is based upon a complaint of an individual, the individual shall be notified to appear at the time and place of the hearing by certified mail, return receipt requested;

4. If the return receipt has been returned unsigned, or the individual does not appear, except where due to circumstances beyond his control he cannot appear, at the time and place of the hearing, any charge made by that individual shall not be considered by the hearing authority and shall be dismissed with prejudice;

5. The accused police officer shall have the right and opportunity to obtain and have counsel present, and to be represented by the counsel;

6. The appointing authority, legislative body, or other body as designated by the Kentucky Revised Statutes shall subpoena and require the attendance of witnesses and the production by them of books, papers, records, and other documentary evidence at the request of the accused police officer or the charg-

ing party. If any person fails or refuses to appear under the subpoena, or to testify, or to attend, or produce the books, papers, records, or other documentary evidence lawfully required, the appointing authority, legislative body, or other body as designated by the Kentucky Revised Statutes may report to the Circuit Court or any judge thereof the failure or refusal, and apply for a rule. The Circuit Court, or any judge thereof, may on the application compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from the court;

7. The accused police officer shall be allowed to have presented, witnesses and any documentary evidence the police officer wishes to provide to the hearing authority, and may cross-examine all witnesses called by the charging party;

8. Any police officer suspended with or without pay who is not given a hearing as provided by this section within sixty (60) days of any charge being filed, the charge then shall be dismissed with prejudice and not be considered by any hearing authority and the officer shall be reinstated with full back pay and benefits; and

9. The failure to provide any of the rights or to follow the provisions of this section may be raised by the officer with the hearing authority. The hearing authority shall not exclude proffered evidence based on failure to follow the requirements of this section but shall consider whether, because of the failure, the proffered evidence lacks weight or credibility and whether the officer has been materially prejudiced.

(2) Any police officer who shall be found guilty by any hearing authority of any charge, may bring an action in the Circuit Court in the county in which the local unit of government may be located to contest the action of that hearing authority, and the action shall be tried as an original action by the court.

(3) The judgment of the Circuit Court shall be subject to appeal to the Court of Appeals. The procedure as to appeal to the Court of Appeals shall be the same as in any civil action. As the provisions of this section relate to a minimum system of professional conduct, nothing herein shall be construed as limiting or in any way affecting any rights previously afforded to police officers of the Commonwealth by statute, ordinance, or working agreement.

(4) The provisions of this section shall apply only to police officers of local units of government who receive funds pursuant to KRS 15.410 through 15.992.

KRS 15.520 sets forth specific procedural due process steps that a city must comply with in connection to investigating and resolving a complaint of misconduct against a city police officer. Our Supreme Court observed that the purpose of KRS 15.520 "is to mandate a prompt hearing of charges *pending* before the administrative body, and to provide a remedy where such hearing is not forthcoming." *Brown v. Jefferson County Police Merit Bd.*, 751 S.W.2d 23, 26 (Ky.1988). A suspended officer is entitled to a hearing within sixty days, and is to receive seventy-two hours notice of the hearing. KRS 15.520(1)(h)(1), (8). The officer may raise the "failure to provide any of the rights or to follow the provisions of [KRS 15.520]" with the hearing authority. KRS 15.520(1)(h)(9).

Pearce's situation is analogous to that in *Redmon v. McDaniel*, 540 S.W.2d 870 (Ky. 1976), in which a policeman resigned prior to an administrative hearing. The court held that "a voluntary resignation is just as much a waiver of [the officer's] statutory right to a hearing as is the waiver of a jury trial by an accused." *Id.* at 871. Concededly, *Redmon* was decided under different statutory authority, KRS 78.445 and 78.455, as opposed to KRS 15.520, but both statutes set forth comprehensive administrative procedures by which public employees may contest disciplinary sanctions, including further review by means of an original action in circuit court, with an appeal to the court of appeals. *Compare* KRS 15.520(2)–(3), *with* KRS 78.455(2)–(3).[4]

■ In this case, Pearce resigned prior to invoking any rights under KRS 15.520. Thus, to the extent Pearce claimed violations of KRS 15.520 in his amended complaint, counts II–V, those claims are precluded by his failure to exhaust his administrative remedies under the statute. We also agree with Appellees that three of Pearce's remaining counts, count VI for wrongful discharge, count VII for intentional interference with contractual relations, and count VIII for civil conspiracy, all concern Pearce's employment status and separation from that employment with the Harrodsburg Police Department. Compliance or noncompliance with KRS 15.520 is implicated, and Pearce's failure to follow through with the administrative process similarly precludes those claims. Simply put, because Pearce chose to resign and not follow through with the administrative process and hearing, we have no way to know what the result of that process

---

**4.** *Brown*, cited above, neither requires a different result nor provides a remedy. In that case, the administrative body denied the officer a hearing and summarily dismissed the proceeding.

would have been. *See Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 626 (Ky.2001) (noting. that "one must first show injury as the result of a statutory application, before that application may be attacked").

■ In an attempt to avoid the consequences flowing from his resignation, Pearce claims that he was constructively discharged prior to tendering his resignation. In cases involving constructive discharge, "the commonly accepted standard is whether, based upon objective criteria, the conditions created by the employer's actions are so intolerable that a reasonable person would feel compelled to resign." *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky.App.2000). Pearce points to the following facts to establish the intolerable conditions resulting in his constructive discharge: ' upon issuing the Notice of Suspension, ' Whitenack took possession of Pearce's badge, service revolver, police identification, and police cruiser, and "prominently displayed on [Whitenack's] office desk ... Pearce's Badge and Police identification[,]" and further removed Pearce's personal items from the cruiser and placed them in a plastic trash bag for Pearce to retrieve. Plaintiff's Complaint, ¶¶ 16–18. Again, while this claim is precluded by Pearce's failure to exhaust his administrative remedies, we hold that, based ·on objective ·criteria, these actions do not create intolerable conditions which would compel a reasonable person to resign.

B. *Invasion of Privacy*

' ■ Pearce's claim for Invasion of Privacy arises from Whitenack's Notice of Verbal Counseling. Amended Complaint, Count 1. This claim stands on slightly dif-ferent footing than Pearce's claims regarding his separation from employment since the incident did not result in a suspension, and no hearing was therefore required under KRS 15.520(1)(h). *See Sobolewski v. Louisville Downs, Inc.*, 609 S.W.2d 943, 946–47 (Ky.App.1980) (stating that under Ky. Const. § 14, "[c]itizens must have a remedy with due process of law for any injury" by resort to the courts).

Pearce's allegation is that Whitenack's action was based on conduct which took place in the privacy of Pearce's own home, *i.e.*, the posting on Pearce's Facebook page of a comment relating to a fatal car accident that Pearce had worked. Pearce argues that the trial court impermissibly interposed an element of "expectation of privacy" in the tort of Invasion of Privacy.

■ Pearce relies upon the holding in *Rhodes v. Graham*, 238 Ky. 225, 37 S.W.2d 46 (1931), as support for his argument. In *Rhodes*, the court noted the right of privacy includes " 'the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, it is the right to be let alone.' " 238 Ky. at 228, 37 S.W.2d at 47 (quoting *Jones v. Herald Post Co.*, 230 Ky. 227, 18 S.W.2d 972 (1929)).[5] More recently, the Kentucky Supreme Court adopted the Restatement (Second) of Torts § 652A in *McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky.1981), In so doing, the court incorporated the Restatement's rule concerning Intrusion upon Seclusion, § 652B: "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the

---

**5.** The right of privacy, of course, protects against four distinct torts: (1) unreasonable intrusion upon seclusion of another; (2) misappropriation of another's name or likeness; (3) unreasonable publicity given to one's pri-vate life; and (4) publicity that places another in a false light. *McCall v. Courier–Journal & Louisville Times Co.*, 623 · S.W.2d 882, 887 (Ky.1981) (adopting Restatement (Second) of Torts § 652A (1976)). ·

intrusion would be highly offensive to a reasonable person." While this section was originally adopted in 1965, before the invention of the personal computer, the internet, and social networking sites, its comments are instructive:

> The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. **Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye**....

Restatement (Second) of Torts § 652B cmt. c (1977) (emphasis added). By analogy, Pearce's Facebook posting was a walk on the Internet, the information superhighway.

Courts in other jurisdictions have held that to be actionable, a plaintiff must have a reasonable expectation of privacy in the matter. *E.g., Trundle v. Homeside Lending, Inc.,* 162 F.Supp.2d 396, 401 (D.Md. 2001) (applying Maryland law) ("plaintiff must have a reasonable expectation of privacy in the source of the information[ ]"); *Taus v. Loftus,* 40 Cal.4th 683, 725, 54 Cal.Rptr.3d 775, 151 P.3d 1185, 1212 (2007) (holding that "[t]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source[ ]"); *Swarthout v. Mut. Serv. Life Ins. Co.,* 632 N.W.2d 741, 744 (Minn.Ct.App.2001) (stating that the tort of intrusion upon seclusion has three elements: an intrusion; that is highly offensive to a reasonable person; into some matter in which a person has a legitimate expectation of privacy); *Villanova v. Innovative Investigations, Inc.,* 420 N.J.Super. 353, 364, 21 A.3d 650, 656 (App.Div.2011) (affirming summary judgment for defendant as plaintiff never showed that he "was in a location where he had a reasonable expectation of privacy").

The obvious problem with Pearce's argument, as recognized by the trial court, is that he chose to post his comment on a public forum. In *United States v. Meregildo,* 883 F.Supp.2d 523, 525 (S.D.N.Y. 2012), the court discussed the expectation of privacy as relates to computer use and social media:

> Generally, people have a reasonable expectation of privacy in the contents of their home computers. *See United States v. Lifshitz,* 369 F.3d 173, 190 (2d Cir.2004). But this expectation is not absolute, and may be extinguished when a computer user transmits information over the Internet or by e-mail. *See Lifshitz,* 369 F.3d at 190; *see also Guest v. Leis,* 255 F.3d 325, 333 (6th Cir.2001).

> Facebook—and social media generally—present novel questions regarding their users' expectations of privacy. Facebook users may decide to keep their profiles completely private, share them only with "friends" or more expansively with "friends of friends," or disseminate them to the public at large. (*See* Facebook Help Center, http://www.facebook.com/help/privacy (last visited Aug. 10, 2012).) Whether the Fourth Amendment precludes the Government from viewing a Facebook user's profile absent a showing of probable cause depends, *inter alia,* on the user's privacy settings.

When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment. *See Katz,* 389 U.S. at 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (citations omitted). However, postings using more secure privacy settings reflect the user's intent to preserve information as private and may be constitutionally protected. *See Katz,* 389 U.S. at 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (citations omitted).

883 F.Supp.2d at 525.

In this case, Pearce posted a comment about a fatal traffic accident on Facebook. The record is silent as to whether this comment was on a public or private area of Pearce's Facebook page. But, as with all internet communications, Pearce ran the risk that even a posting or communication he intended to remain private would be further disseminated by an authorized recipient. *See Guest,* 255 F.3d at 333 (stating "[u]sers would logically lack a legitimate expectation of privacy in the materials intended for publication or public posting. . . . They would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, 'whose expectation of privacy ordinarily terminates upon delivery' of the letter") (citations omitted).

For the foregoing reasons, the Mercer Circuit Court's Orders are affirmed.

ACREE, Chief Judge, concurs.

TAYLOR, Judge, dissents and files separate opinion.

TAYLOR, Judge, dissenting.

Respectfully, I dissent. The meager record on appeal in this case reflects that Pearce filed a complaint in the Mercer Circuit Court alleging several causes of action, including constructive discharge from his employment as a police officer by the City of Harrodsburg. Approximately twenty days after the complaint was filed in August of 2012, appellees filed a motion to dismiss. Other than the filing of the amended complaint, which reasserted the constructive discharge claim, there were no other substantive pleadings filed and most importantly, no discovery of any kind taken in this case. The circuit court dismissed the case less than five months after being filed on the sole legal basis of Pearce's failure to exhaust his administrative remedies under the protections afforded police officers in Kentucky pursuant to KRS 15.520, *et seq.* The majority has affirmed the circuit court by using a statute expressly intended to guarantee due process rights for police officers of local governments in Kentucky and in so doing, has effectively denied Pearce those very due process rights that the statute affords.

I agree that KRS 15.520 was triggered in this case by the citizens' complaint filed against Pearce. Based on the alleged actions of his superiors, Pearce resigned on June 1, 2012, which he alleges amounts to a constructive discharge of his employment as a police officer. However, Pearce still attempted to invoke the administrative procedures of KRS 15.520 by filing a grievance with the City of Harrodsburg later that day on June 1. Rather than give Pearce an administrative hearing, to which he was entitled, the City and its Commissioners—not Pearce—unilaterally ended the administrative process. In a letter dated June 4, 2012, from the City attorney to Pearce's attorney that was also served on Pearce, the City attorney stated the following:

Dear Mr. Guthrie:

On June 1, 2012, at approximately 11:00 a.m., City Clerk Kim Stinnett received the tendered resignation of former Officer Jeffry [sic] Pearce. On the same

date at approximately 1:00 p.m., she received a tendered grievance from him. Please be advised that the grievance was procedurally defective and will not be addressed by the City or its Board of Commissioners.

Sincerely,

Hon. Douglas L. Greenburg, City Attorney

The circuit court and the majority in their Opinion have effectively ignored Pearce's attempt to proceed in the administrative process which was terminated by the City, not Pearce. The circuit court's conclusion that Pearce failed "to exhaust his administrative remedies" is totally contradicted by the record in this case that reflects the City terminated the administrative process, leaving Pearce no other option but to file suit in the Mercer Circuit Court.

In *City of Munfordville v. Sheldon*, 977 S.W.2d 497 (Ky.1998), the Kentucky Supreme Court upheld the right of a police chief who had been fired by the City's mayor for cause, to be entitled to an administrative hearing under KRS 15.520, *et seq.* Under KRS 15.520, *et seq.*, I can find no distinction or difference where a police officer who has been constructively discharged should be treated any differently than one who has been involuntarily discharged as occurred in *City of Munfordville. See id.*

Under the majority's misguided logic, Pearce can neither pursue his administrative remedies under KRS 15.520 nor pursue his common law remedies in circuit court because he resigned. Effectively, both remedies are forevermore forfeited due to Pearce's resignation, albeit he alleges constructive discharge not voluntary termination. What is more disturbing with this logic is that one of the few known facts that can be discerned from the limited record on appeal is that the City of Harrodsburg terminated the administra-

tive process, not Pearce. This leads one to ask, "How can Pearce exhaust his administrative remedy if the City refuses to give him a hearing?"

The majority has essentially concluded that because there exists a police bill of rights under KRS 15.520, a police officer cannot assert a claim for constructive discharge even if his employer creates intolerable working conditions that would compel a reasonable police officer to resign. In other words, a police officer can never resign in Kentucky and assert a constructive discharge claim because his resignation would preclude an administrative hearing and thus, constitute a failure to exhaust his administrative remedy. This is not the law in Kentucky, nor did the General Assembly intend such a draconian result upon passage of KRS 15.520, in my opinion.

Finally, I further must dissent in the majority impermissibly becoming a factfinder in this case regarding the constructive discharge claim, concluding that based on "objective criteria" the actions against Officer Pearce did not create intolerable working conditions which would compel a reasonable person to resign. This issue was not even addressed by the circuit court below based on its holding that Pearce failed to exhaust his administrative remedies. The majority has clearly overstepped the boundary of permissible review in this appeal, given that there has been absolutely no discovery conducted in this case to date. The only substantive matters before this Court are unproven allegations by both parties.

On the merits, Pearce's termination of employment may have been justified. However, this Court cannot reach that issue until Pearce is afforded an administrative hearing or his day in court, neither of which has occurred in this case.

For the foregoing reasons, I would reverse and remand this action to the circuit court with directions that it remand the case to the City of Harrodsburg to conduct an administrative hearing as contemplated under KRS 15.520 on both the citizen complaint and the grievance filed by Pearce.